# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

**ELIZABETH GREGG o/b/o C.E.H.,**  )

    **PLAINTIFF,**  )

VS.  )       2:08-cv-1199-JHH

**MICHAEL J. ASTRUE,**  )
**COMMISSIONER OF**
**SOCIAL SECURITY,**  )

    **DEFENDANT.**  )

## MEMORANDUM OF DECISION

Plaintiff Elizabeth Gregg brings this action on behalf of her minor child C.E.H. ("claimant") seeking review of the decision of the Commissioner of Social Security ("Commissioner") to cease Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. For the reasons set forth below, the decision is due to be affirmed.

### I. PROCEDURAL HISTORY

Gregg filed an application for SSI in December 1999 on behalf of her minor child, C.E.H. On March 10, 2000, the claimant was found disabled due to a speech impairment that met the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.02B1, with an onset date of December 1, 1999. (Tr.

21.) In November 2003, a continuing disability review determined that the claimant's impairment was no longer disabling, and plaintiff received a notice of cessation of disability. (Tr. 23-30.) Plaintiff appealed from this decision and requested and received a hearing before an Administrative Law Judge (ALJ). The hearing was held on May 23, 2006 in Birmingham, Alabama. (Tr. 353-75.) In her June 10, 2006 decision, the ALJ determined that the claimant's condition had medically improved and he was no longer disabled as of November 2003. (Tr. 19-20.) The ALJ further found that the claimant's other "severe" impairments do not result in "marked and severe" functional limitations; thus, the ALJ concluded that the claimant is not disabled within the meaning of the Social Security Act. (Tr. 20.) After the Appeals Council denied plaintiff's request for review of the decision of the ALJ, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Sections 405(g) and

1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence. Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance.." Lamb, 847 F.2d at 701.

### III.  ADMINISTRATIVE RECORD

In February 2000, the claimant underwent a Speech/Language Evaluation. (Tr. 161-62.)  This evaluation showed a moderate deficit in language skills and a significant deficit in articulation. (Id.) As a result, the claimant was found to be disabled as of December 1, 1999. (Tr. 21, 24.)

During a later evaluation in October 2003, Speech/Language Pathologist Julie Roark found that the claimant's vocal quality and fluency skills, as well as his expressive language skills, were within normal limits and his receptive language skills were only mildly impaired.  (Tr. 207.)  Ms. Roark reported, however, that the claimant's speech articulation skills at the conversation level remained impaired.  (Id.)  The evaluation showed his intelligibility was 95% at the single word level and 70-75% at the connected speech level. (Tr. 206.) Based on this Speech/Language evaluation, the claimant's speech impairment was found to have medically improved as of November 2003.  (Tr. 24.)

The claimant was six years old when his disability was found to have ceased.  At the time of the hearing in May 2006, he was eight years old and in the second grade.  (Tr. 358.)  The claimant's mother testified he is disabled due to a speech impairment, learning disabilities, asthma, and migraine headaches.  (Tr. 358-59.)  She stated that her son has difficulty with math and reading and does not

pay attention. (Tr. 363-64). He can, however, concentrate on video games; he also plays with his friends and does not have any socialization problems. (Tr. 364, 367.) A nebulizer helps the claimant's asthma, and he does not have problems in gym class or when he plays basketball with his friends. (Tr. 141, 359.) The claimant testified that he gets headaches every day, but medication helps them go away. (Tr. 372-73.)

Medical records submitted by the claimant reveal many normal ailments of a child. For instance, Dr. Derrol Dawkins, the claimant's primary physician, treated the claimant for a cold, ear infection, and tonsilitis in August 2000. (Tr. 229.) The following month, in September 2000, the claimant was seen in the emergency department of Children's Hospital for allergic rhinitis and a sinus infection. (Tr. 190-92, 195.)

The claimant returned to Dr. Dawkins in March 2002 for a routine check-up. (Tr. 228.) In May 2002, the claimant was treated at Children's Hospital for cough and bronchospasm. (Tr. 180-83, 194.). Seven months later, the claimant returned to Dr. Dawkins with complaints of wheezing that began the morning of his visit. (Tr. 226.) The claimant was diagnosed with asthma and prescribed a nebulizer and oral steroids. (Id.)

Two days later, the claimant was treated for a rash at Children's Hospital.

(Tr. 171-79.) During a follow-up visit with Dr. Dawkins, it was noted that claimant's rash was responding to medication, and the doctor said he could return to school. (Tr. 225.) The claimant returned to Dr. Dawkins for a routine check-up in April 2003. (Tr. 224.) Five months later, in September 2003, the claimant was treated for sinusitis and upper respiratory infection. (Tr. 222.)

On December 19, 2003, the claimant was examined by Tamecka L. Knight. (Tr. 220-21.) The claimant reported having headaches for the past two months. (Tr. 220.) He described the headaches as occurring two to three times a week at the same time of day, and that they lasted about twenty minutes. (Id.) He stated that the headaches were relieved by sleep and Motrin (Id.) Dr. Knight diagnosed the claimant with migraine headache. (Tr. 221.)

The claimant was still having headaches when he was seen by his regular physician, Dr. Dawkins, in April 2004. (Tr. 247.) Dr. Dawkins prescribed Inderal to treat the migraines (id.), and the following month the claimant reported that he felt much better. (Tr. 246.) He did not have any side effects from the migraine medication, but had experienced one episode of wheezing for which Dr. Dawkins prescribed Albuterol. (Id.) The claimant did not return to Dr. Dawkins until September 6, 2005. (Tr. 245.) At that time, the claimant stated that he was still having migraine headaches, and his prescription for Inderal was renewed. (Id.)

On September 20, 2005, the claimant underwent a Psycho-Educational Evaluation by Edith S. Fisher, a psychometrist for the Birmingham City Schools. (Tr. 230-37.)  During the evaluation, the claimant displayed a cooperative and friendly attitude, and Ms. Fisher found that rapport was easy to establish and maintain, but noted that he "required repetition of instruction because of difficulty in comprehension." (Tr. 230.)  Ms. Fisher reported that his response style was "inconsistent, varying between careful and careless responses." (Id.)  The claimant adapted slowly to new tasks as the testing progressed, but maintained a consistent level of effort in response to difficult tasks. (Id.)  He also "showed good persistence and attacked tasks without the need for encouragement." (Tr. 230-31.)  Given the above, Ms. Fisher believed that the results of the evaluation "reflect a reliable and valid estimate of [claimant's] current level of functioning." (Tr. 231.)

Testing revealed that the claimant's full-scale IQ score was 75, placing him in the borderline range of intelligence. (Tr. 233.)  His performance on the Kaufman Test of Educational Achievement showed his academic ability was in the lower range of national norms for his age group. (Tr. 236.) Ms. Fisher concluded special class placement would be advisable. (Id.)

The claimant also submitted school records in support of his disability claim. (Tr. 139-44.)  An Individualized Education Program (IEP), completed

7

before the claimant entered the third grade for the 2006/2007 school year, reported as follows:

> [Claimant] is an eight year old who will be in the third grade for the 2006/2007 school year. [Claimant] lives with his mother and sibling. He enjoys drawing and coloring and playing with friends. [Claimant] says he likes coming to school and appears to be a happy child. He has a very sweet personality and is polite to adults. He does not always want to do assignments. He tends to use feeling bad as a way to get out of doing his assignments and often complains of having a headache.
> [Claimant] has deficits in the areas of language, reading and math. He was initially speech and language impaired but further testing was requested. The assessment found him to have a learning disability in those areas.

(Tr. 140.)  His report card showed that he failed reading, language arts, and math in the second grade, but earned passing grades in science and social studies.  (Tr. 141.)  The claimant also scored an "A" in music, a "B" in conduct, and an "Excellent" in Physical Education.  (Id.)

On a Child Development and Functioning Rating form, second grade teacher, Ms. C. Summerville[1], reported that the claimant had marked limitations in acquiring and using information and attending and completing tasks.  (Tr. 142-43.)  On a separate form, titled Attention Deficit Hyperactivity Disorder, Ms. Summerville indicated that the claimant experienced marked levels of inattention,

---

[1] According to the claimant's mother, Ms. Summerville was claimant's homeroom and physical education teacher.  (Tr. 361.)

impulsiveness, and hyperactivity. (Tr. 144.)

## IV.  THE DECISION OF THE ALJ

The claimant was found disabled as of December 1, 1999, due to a speech impairment that met Listing 112.02B1. (Tr. 21.) When a child has been found disabled, his or her continued eligibility for such benefits are reviewed periodically. See 42 U.S.C. § 1382c(a)(3)(H)(ii). The first step in assessing whether a child's disability continues is determining whether his impairment has medically improved.[2]  20 C.F.R. § 416.994a(a)(1). If medical improvement is found, the second step is determining whether the impairment the child had at the time of his most recent favorable decision now meets, medically equals, or functionally equals the severity of the listing it met or equaled at that time. Id. If the impairment still meets or equals the severity of that listed impairment, the claimant is still disabled and the analysis ends. Id.  However, if the past disability has ended, the analysis continues, and it must be determined whether the child is currently suffering from an impairment or combination of impairments that are disabling under 20 C.F.R. § 416.924(c) and (d). Id.

In this case, the ALJ found that claimant's speech impairment had medically

---

[2] The exceptions to medical improvement, found in 20 C.F.R. § 416.994a(e) & (f) do not apply in this case.

improved as of November 2003. (Tr. 16, 19.) The ALJ then found that the claimant's speech impairment no longer meets, medically equals, or functionally equals Listing 112.02B1. (Tr. 16-17.) The ALJ, therefore, moved to the final step in her analysis.

In considering whether the claimant's current impairments are disabling under 20 C.F.R. § 416.924, the ALJ first determined that the claimant has the following severe impairments: asthma, borderline intellectual functioning, mild receptive language deficit, and migraine headaches. (Tr. 17.) Next, the ALJ found that the claimant does not have an impairment, or combination of impairments, that meets or medically equals the Listings. (Tr. 17, 20.) Therefore, the remaining issue was whether the claimant's impairments functionally equal the Listings.

A child's functional limitations are evaluated in six broad functional areas, called domains. The domains are broad areas of functioning, intended to capture all of what a child can or cannot do in comparison to other children of similar age. The six domains are as follows:

        1. Acquiring and using information;
        2. Attending and completing tasks;
        3. Interacting and relating with others;
        4. Moving about and manipulating objects;
        5. Caring for yourself; and

>    6. Health and physical well being.

See 20 C.F.R. § 416.926a(b)(1)(i-vi).  An impairment, or combination of impairments, functionally equals a listed impairment if it results in a "marked" limitation in two domains or an "extreme" limitation in one domain.  See 20 C.F.R. § 416.926a(d).  An impairment is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities.  See 20 C.F.R. § 416.926a(e)(2)(i). An impairment is "extreme" when it interferes very seriously with the ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a(e)(3)(i).

Here, the ALJ concluded that claimant has marked limitation in only one domain – acquiring and using information.  (Tr. 19-20.)  She concluded that the claimant has less than marked limitation in the domains of attending and completing tasks, interacting and relating to others, and health and physical well-being and that he has no limitation in the domains of moving about and manipulating objects and caring for himself.  (Id.)  Therefore, the ALJ concluded that the claimant was not disabled.  (Id.)

### V.  PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

The plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals

Council, reversed, or in the alternative, remanded for further consideration. Plaintiff does not present much in the way of argument, however. In fact, the argument section of her brief is comprised of a mere six sentences, four of which contain statements of law. (See doc. # 9 at 4-5.) That being said, plaintiff argues that the ALJ should have accorded greater weight to the opinion of the claimant's teacher. (Id. at 4.) She also contends that the ALJ "failed to develop the record" as to whether the claimant is still disabled even if he has improved. (Id.) The court addresses each argument in turn.

### A. Weight to Opinion of Claimant's Teacher

Although plaintiff fails to elaborate as to why greater weight should have been given to the opinion of claimant's teacher, the court opines that it is because claimant's teacher found a "marked" limitation in the domain for "attending and completing tasks."[3] (Tr. 143.) If the ALJ had accepted this opinion and agreed with it, the ALJ would have found the claimant disabled because an impairment, or combination of impairments, functionally equals a listed impairment if it results in a "marked" limitation in two domains. See 20 C.F.R. § 416.926a(d).

The conclusion by the ALJ that the claimant has less than a marked

---

[3] As stated above, the ALJ found a "marked" limitation in the domain of "acquiring and using information" which was consistent with the opinion of claimant's teacher. (Tr. 143.)

limitation in the domain for attending and completing tasks is supported by substantial evidence.  The domain for attending and completing tasks considers how well a child is able to focus and maintain his attention and how well he begins, carries through, and finishes activities:

> (iv) *School-age children (age 6 to attainment of age 12).* When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).  The claimant is able to watch television, use the computer, play video games, play basketball with his friends and listen to music. (Tr. 115, 117, 358, 363-64, 371.)   As of October 2003, he was able to answer questions about a short story or television program, deliver simple messages, play games like tag and hide-and-go seek and pay attention for thirty minutes.  (Tr. 113, 115, 117.)  He does not have a behavioral problem, and the record is devoid of any attention or concentration problems.  (Tr. 140, 363-64.)  The school psychometrist

13

found that claimant displayed a cooperative and friendly attitude and was able to establish and maintain rapport during her testing. (Tr. 230.) She reported that claimant could adapt to new tasks, albeit slowly, and maintained a consistent level of effort in response to difficult tasks. (Id.) He exhibited persistence throughout the testing and did not need encouragement to attack the difficult tasks. (Tr. 230-31.)

Moreover, as correctly noted by the Commissioner, school teachers are not the type of sources that the ALJ may give controlling or heightened weight. Only "acceptable medical sources" can be considered as treating sources who opinion may be entitled to controlling weight by the ALJ. See 20 C.F.R. § 416.927(d). School teacher are included in the list of "other sources," which may be used to show the severity of the child's impairment and how he typically functions compared to other children his same age who do not suffer from impairments. See 20 C.F.R. § 416.913(d). Here, the ALJ considered the information contained in the claimant's school records. (Tr. 17, 19.) She specifically considered the testing performed by the Birmingham City School system and its results, and referenced other school records, including his report card. (Tr. 17.) Therefore, the ALJ accorded the proper weight to the opinion of claimant's teacher.

### B. Development of the Record

Again, plaintiff does not elaborate on how the ALJ failed to develop the record and the court is at a loss as to what grounds plaintiff bases her argument. All plaintiff states in her brief is as follow: "Plaintiff submits that once there has been improvement that the ALJ is required to still make a new determination as to whether or not C.E.H. is still disabled even if he has improved, and the ALJ failed to develop the record."  (Doc. # 9 at 4.)

This "argument" misstates the findings in the opinion of the ALJ, and the thorough analysis performed.  As explained in Section IV, supra, after the ALJ found medical improvement (tr. 16), she properly continued her analysis and made a new determination that claimant was not disabled under the Listing for impairment for speech.  (Tr. 17.)  The ALJ correctly noted that the listing requires "specific signs, symptoms and laboratory findings that are no longer demonstrated by the current record, and no treating or examining source or medical expert has concluded otherwise."  (Id.)

While the ALJ has "a basic obligation to develop a full and fair record," Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981), and duty to "investigate the facts and develop the arguments both for and against granting benefits," Sims v. Apfel, 530 U.S. 103, 111 (2000), the claimant has the responsibility to produce

15

evidence in support of his disability claim, Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  Evidence regarding the specific limitations claimant experiences is evidence the claimant is responsible for producing.  See Ellison, 355 F.3d at 1276.  Accordingly, it is the claimant, and not the ALJ, who carries the burden to provide a medical record that is complete in the first instance.  See 20 C.F.R. §§ 416.913(e), 416.916.  If the claimant had or knew of additional medical evidence that supports his claims of disability, it was the claimant's responsibility to raise that evidence for the ALJ to consider.

## VI.  CONCLUSION

In summary, the court concludes that the determination of the ALJ that plaintiff is not disabled was supported by substantial evidence and proper legal standards were applied in reaching this determination.  The final decision of the Commissioner, therefore, is due to be affirmed.

A separate order will be entered.

**DONE** this the ___3rd___ day of February, 2009.

*James H. Hancock*
_____
SENIOR UNITED STATES DISTRICT JUDGE